UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NATIONAL WASTE ASSOCIATES, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:20-cv-00654 ) |
| LIFEWAY CHRISTIAN RESOURCES OF THE SOUTHERN BAPTIST CONVENTION, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Leave to Modify Case Management Order and for Leave to File an Amended Complaint to replead a dismissed claim for breach of the implied covenant of good faith and fair dealing due to new discovery. (Doc. No. 54). Defendant has responded in opposition, and Plaintiff has replied. (See Doc. Nos. 58, 61). For the reasons that follow, Plaintiff's motion will be denied.

I.  BACKGROUND

A.  Factual Background[1]

Plaintiff National Waste Associates ("NWA") is a Connecticut company that provides waste removal management and recycling services throughout the country. (Compl. ¶ 1). Defendant LifeWay is a Tennessee non-profit that owned and operated approximately 170 retail bookstores. (Id. ¶ 2). Around April 2010, the parties entered into an initial 36-month contract for

---

[1] The following factual background is largely drawn from the Court's prior opinion and order granting in part and denying in part Defendant's Motion to Dismiss. (See Doc. No. 42).

1

NWA to provide waste removal and recycling services to LifeWay's bookstores. (Id. ¶¶ 6, 9). The parties renewed the contract on an annual basis until November 1, 2018, when the parties negotiated a five-year extension that was set to expire in 2023 (the "Agreement"). (Id. ¶¶ 6–8; see also Doc. No. 1-2 at 3). Pursuant to those negotiations, NWA agreed to provide its services at a 35% reduced rate. (Compl. ¶¶ 6–8, 15).

On November 30, 2019—about a year into the five-year term—LifeWay notified NWA of its intent to close all 170 stores serviced under the Agreement. (Id. ¶ 15). The Agreement contained several provisions that contemplated LifeWay's need to close stores, (Doc. No. 1-2); however, the parties disagree whether it allowed LifeWay to close *all* stores. It is undisputed, however, that the Agreement included a cancellation provision that allowed LifeWay to, so long as it provided sufficient notice, "cancel service at any location where service is no longer needed due to location closure and the price to [LifeWay] will be reduced according to the reduction in service." (Id. at 4–5). That provision also stated that for "[l]ocation closures of five percent or more as compared to the total amount of locations at the beginning of each successive Agreement year may affect pricing at the remaining locations being serviced by [NWA]." (Id.). The Agreement contained a Connecticut choice of law provision. (Id. at 7; see also Compl. ¶ 13).

On July 29, 2020, NWA brought suit, arguing that LifeWay breached the Agreement by closing all of its stores with almost four years remaining in the operative Agreement. (Doc. No. 23 at 4–5; see also Compl. ¶¶ 15, 18–19). NWA alleged four claims: (1) breach of contract (Count I); (2) breach of the implied covenant of good faith and fair dealing (Count II); unjust enrichment (Count III); and quantum meruit (Count IV).

2

B. Procedural Background

On October 12, 2020, LifeWay filed a Motion to Dismiss all claims, including the breach of the implied covenant of good faith and fair dealing. (Doc. No. 15). NWA responded that there were sufficient facts, as set out in the Complaint, demonstrating that LifeWay acted in bad faith when closing all of its stores before the contract term expired. (Doc. No. 23 at 2, 5, 19). But on June 16, 2021, the Court dismissed the breach of the implied covenant of good faith and fair dealing claim, (Count II), reasoning that NWA failed to plausibly allege facts from which to infer that LifeWay acted "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." (Doc. No. 42 at 6 (citations omitted)).

Pursuant to the Initial Case Management Order, the deadline to amend pleadings was April 22, 2021. (Doc. No. 24 at 7). On December 7, 2021, NWA filed the instant Motion or Leave to Amend, arguing that the Court should extend the amendment deadline through December 7 so that it may replead the dismissed breach of the implied covenant of good faith and fair dealing claim. (Doc. No. 54 at 3).

## II. STANDARD OF REVIEW

Typically, motions for leave to amend are reviewed under the deferential standard of Federal Rule of Civil Procedure 15(a)(2), whereby the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under that standard, the district court has substantial discretion and may deny a motion for leave "based on undue delay, bad faith or dilatory motive or futility of amendment." Pedreira v. Ky. Baptist Homes for Children, 579 F.3d 722, 729 (6th Cir.

2009). The court can also deny such a motion due to the "repeated failure [of the moving party] to cure deficiencies" or because of "undue prejudice" to the non-moving party. But, in general, the mandate that leave is to be "freely given . . . is to be heeded." Forman v. Davis, 371 U.S. 178, 182 (1962).

However, "a different standard applies when a proposed amendment is so late that it would require the modification of a Rule 16 scheduling order." Korn v. Paul Revere Life Ins. Co., 382 F. App'x 443, 449 (6th Cir. 2010) (citing Leary v. Daeschner, 349 F.3d 888, 904 (6th Cir. 2003)). Federal Rule of Civil Procedure 16 permits the modification of a scheduling order only for "good cause" and with the court's consent. Fed. R. Civ. P. 16(b)(4). This heightened standard "ensure[s] that at some point both the parties and the pleadings will be fixed" only subject to modification based upon a showing of good cause. Leffew v. Ford Motor Co., 258 F. App'x 772, 777 (6th Cir. 2007).

Courts determine good cause by measuring the movant's "diligence in attempting to meet the case management order's requirements." Inge v. Rock Fin. Corp., 281 F.3d 613, 625–26 (6th Cir. 2002). The plaintiff must show that "despite [his] diligence [he] could not meet the original deadline." Shane v. Bunzl Distribution USA, Inc., 275 F. App'x 535, 536 (6th Cir. 2008). Moreover, in considering "good cause," the court must also consider—as one "consideration that informs" the analysis—whether the defendant would be prejudiced by the amendment and the modification of the scheduling order. Korn, 382 F. App'x at 450.

Even if no prejudice is evident, a plaintiff still "must [] explain why he failed to move for the amendment at a time that would not have required a modification of the scheduling order." Korn, 382 F. App'x at 450. Where a plaintiff's explanation for delay is simply insufficient or not

4

credible, it is appropriate for the court to deny the motion for leave to amend. Id.; see also Commerce Benefits Group v. McKesson Corp., 326 F. App'x 369, 376 (6th Cir. 2009). If the plaintiff establishes "good cause," the court then proceeds to the more permissive Rule 15(a)(2) analysis. Commerce Benefits, 326 F. App'x at 376.

### III. ANALYSIS

NWA seeks leave to amend the Complaint in order to reassert its breach of the implied covenant of good faith and fair dealing claim against LifeWay. (See Doc. Nos. 54 at 2). NWA argues that recently revealed discovery establishes that LifeWay "did, in fact, breach the implied covenant of good faith and fair dealing when it suddenly decided to exit the retail business and terminate its waste management agreement with NWA . . .." (Id.; see also Doc. No. 54-1 at 5–6). Specifically, NWA argues that the November 18, 2021 deposition of Rick Mathis, LifeWay's Rule 30(b)(6) corporate designee, establishes that LifeWay "had no intention of leaving the in-store retail sales business," and that the "parties' Agreement did not contain the sort of express terms and conditions needed to simply cease operations and terminate the parties' 5-year Agreement." (Doc. No. 54-1 at 6). NWA asserts that it "had no reason to seek the current amendment" prior to the initial April 22, 2021 deadline because its generally pled bad faith claim had not yet been ruled on by the Court. (Id. at 7). Moreover, NWA argues that it was not able to "develop evidence about Defendant's motives and objectives" until its deposition of Mathis. (Id.).

NWA acknowledges that, for the Court to grant leave to amend, it must show good cause, including no substantial prejudice to LifeWay resulting from the proposed Amended Complaint. NWA argues that LifeWay would not suffer prejudice because: (1) any delay will neither impact the adjudication of the case nor the August 2, 2022 trial date; (2) the evidence at the heart of its

5

proposed amendment has always been in LifeWay's possession; and (3) the breach of implied covenant of good faith and fair dealing claim arises out of the same facts as its breach of contract claim. (Id. at 8–9).

LifeWay responds that there is no good cause for allowing NWA to amend the Complaint at this late stage. (Doc. No. 58 at 11–12). LifeWay argues that there is no fact in the proposed amended complaint that was not already available to NWA before it filed suit," and that NWA could have therefore met the original April 22, 2021 deadline had it acted diligently. (Id. at 12). According to LifeWay, NWA's delay in seeking an amendment was exacerbated by its own lack of diligence, whereby it delayed review of discovery materials available to it in June, cancelled a deposition of a LifeWay witness familiar with the Service Agreement at issue in July, and failed to involve the Court until initiating a discovery dispute in November 2021. (Id. at 14). Additionally, LifeWay argues that NWA's proposed amendment is futile because the repleaded bad faith claim is no more plausible than the one already dismissed by the Court. (Id. at 19). LifeWay therefore argues that the Court deny the instant motion for leave to amend. (See id. at 20).

The Court agrees with LifeWay. Having reviewed NWA's proposed amendments and the record, the Court concludes that NWA's lack of diligence and the significant prejudice that allowing the proposed amendments would inflict on LifeWay weighs against amending the case management order (under Rule 16(b)) or granting leave to amend the Complaint (under Rule 15). See Leary, 349 F.3d at 909.

With respect to Rule 16(b), NWA has not shown good cause. A plaintiff fails to show good cause where a proposed amended complaint does not "seek to add anything new—anything

[plaintiff] did not already know before the pleading deadline came and went." Shane, 275 F. App'x at 536–37. As correctly pointed out by LifeWay, the relatively few allegations NWA adds to its proposed amended complaint were available to it before the initial April 22, 2021 amended pleading deadline. These proposed additions included: (1) that the parties could not agree on a contractual term that gave NWA an "unrestricted right to simply terminate the parties' agreement without cause"; (2) that LifeWay never anticipated closing all, rather than some, of its stores; and (3) that the parties disagree as to whether the Agreement enabled LifeWay to close all, rather than some, of its stores. (Doc. No. 54-2 ¶¶ 25(a–f)). But it is apparent that, as early as May 15, 2019, LifeWay notified NWA that its decision to close all of its stores was an "unforeseen transition" and that it was nonetheless committed "to honor [its] obligations to pay per the negotiated terms of [the Agreement]." (Doc. No. 58-10). Moreover, LifeWay's discovery responses and document productions clarified that it "decided in December 2018 and January 2019 to close some of its retail locations after reviewing preliminary retail sales for the 2018 Christmas season and decided by the end of March 2019 to close all retail locations." (Doc. No. 58-11).

Yet, despite its advanced notice, NWA failed to amend its claim for breach of the implied covenant of good faith and fair dealing that, it admits, was "broadly drafted." (Doc. No. 54-1 at 3). That the claim was "broadly drafted", and that the Court's decision on LifeWay's motion to dismiss was still pending, is no excuse. Federal litigants consistently move to timely and reasonably amend complaints while a motion to dismiss is pending. See Smith v. Leis, 407 F. App'x 918, 922 (6th Cir. Feb. 10, 2011) (noting that the district court denied as moot Defendant's pending motion to dismiss after granting plaintiff's motion for leave to amend). Moreover, the Sixth Circuit has made clear that "'[a] misconception of the law is not an excuse for the late

presentation' of new grounds for relief." Shane, 275 F. App'x at 538 (citing Troxel Mfg. Co. v. Schwinn Bicycle Co., 489 F.2d 968, 971 (6th Cir. 1973)). NWA's explanation for delay is therefore neither sufficient nor credible, and the Court may deny leave to amend on that basis. Korn, 382 F. App'x at 450; see also Commerce Benefits, 326 F. App'x at 376.

Even when analyzed under the more lenient Rule 15 standard (which the Court need not reach), any amendment would also be futile. The newly acquired "smoking gun" testimony from the November 21, 2021 Mathis deposition, and its incorporation into the proposed amended complaint, does not remedy NWA's initial pleading infirmity. Contrary to what NWA contends, Mathis's testimony falls far short of establishing that LifeWay "did, in fact, breach the implied covenant of good faith and fair dealing when it suddenly decided to exit the retail business and terminate its waste management agreement with NWA . . .." (Doc. No. 54 at 2; see also Doc. No. 54-1 at 5–6). Rather, the testimony and proposed amendments merely restate what NWA originally and insufficiently pled: broad allegations of bad faith that do not show "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Courteau, 243 F. Supp. 3d at 219 (citing De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 849 A.2d 382, 388 (Conn. 2004)). The proposed amendments merely state in more detail the parties' dispute over the terms of their written Agreement. They do not sufficiently plead that LifeWay acted with fraud, deceit, or sinister motive. Where a proposed amendment is futile, courts may deny leave to amend even under the lenient standard of Rule 15. See Pedreira, 579 F.3d at 729.

Any amendment at this late stage would also prejudice LifeWay. Under Rule 15, courts

8

may deny leave to amend where allowing amendments would be prejudicial to the opposing party. See Fed. R. Civ. P. 15; see also Duggins v. Steak 'n Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999). The Sixth Circuit has found that prejudice exists where "the deadline for filing dispositive motions . . . was imminent." Miller v. Admin. Office of the Courts, 448 F.3d 887, 898 (6th Cir. 2006). Here, the dispositive motions deadline is January 14, 2022. (Doc. No. 39). Such a quickly approaching deadline would not afford LifeWay sufficient time to "engage in additional discovery and timely file its dispositive motion . . .." Clark v. Ascend Fed. Credit Union, No. 3-08-0257, 2009 WL 10698403, at *3 (M.D. Tenn. Jan. 8, 2009).

## IV. CONCLUSION

For the foregoing reasons, NWA's Motion for Leave to Modify Case Management Order and for Leave to File an Amended Complaint. (Doc. No. 54) is **DENIED**. As an additional housekeeping matter, NWA's Motion for Leave to File Reply in Excess of Five Pages (Doc. No. 60) is **DENIED AS MOOT**.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE